## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

|  |  |  |
|---|---|---|
| **ARLINGTON TECHNOLOGIES LLC,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § § | **JURY TRIAL DEMANDED** |
| **NVIDIA CORPORATION,** | § § § | **C.A. NO. 7:25-cv-483** |
| **Defendant.** | § § § | |

## PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Arlington Technologies LLC ("Plaintiff" or "ATL") files this Complaint against Defendant NVIDIA Corporation ("Defendant" or "NVIDIA") for infringement of U.S. Patent No. 7,702,083 (the "'083 patent"), U.S. Patent No. 8,862,456 (the "'456 patent"), U.S. Patent No. 9,088,694 (the "'694 patent"), U.S. Patent No. 10,574,201 (the "'201 patent"), and U.S. Patent No. 11,394,923 (the "'923 patent"), collectively, the "Asserted Patents."

## THE PARTIES

1.      Arlington Technologies LLC is a Texas limited liability company, with a principal place of business in Allen, TX.

2.      Defendant NVIDIA Corporation is a corporation organized and existing under the laws of the State of Delaware that maintains a regular and established place of business in this District, including at 11001 Lakeline Boulevard, Building 2, Suite 100, Austin, TX 78717. NVIDIA Corporation is registered to conduct business in the state of Texas and has appointed Corporation Service Company dba CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701 as its agent for service of process.

1

3.      Defendant is an American technology company that specializes in high-performance computing, artificial intelligence (AI), visualization, and autonomous systems. Defendant sells its products and services to customers, including customers in this District.

4.      Defendant operates and owns the nvidia.com website, and it markets, offers, distributes, and provides technical support for its products and services throughout the United States including in this District.

5.      Defendant develops, designs, manufactures, distributes, markets, offers to sell, and/or sells infringing products and services, such as audio/visual/speech enhancement software solutions, within the United States, including in this District, and otherwise purposefully directs infringing activities to this District in connection with its aforementioned Texas office; its aforementioned website; and its other places of business in Texas and the rest of the United States. Defendant participates in the design, development, manufacture, sale for importation into the United States, offers for sale for importation into the United States, importation into the United States, sale within the United States after importation, and offers for sale within the United States after importation, of products and services that infringe the Asserted Patents.

6.      On information and belief, Defendant is engaged in making, using, selling, offering for sale, and/or importing, and/or inducing its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, the products and services, such as audio/visual/speech enhancement software solutions, accused of infringement.

7.      Through offers to sell, sales, imports, distributions, and other related agreements with distributors and customers operating in and maintaining a significant business presence in the

U.S. and/or its U.S. subsidiaries, Defendant does business in the U.S., the state of Texas, and in this District.

## JURISDICTION AND VENUE

8.      This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10.     This Court has specific and general personal jurisdiction over Defendant consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute because, inter alia, (i) Defendant has engaged in continuous, systematic, and substantial business in Texas; (ii) Defendant is registered to do business in Texas; (iii) Defendant maintains regular and established places of business in this District; and (iv) Defendant has committed and continues to commit, acts of patent infringement in this State and in this District. Such acts of infringement include the making, using, testing, offering for sale, and selling of the Accused Products (as more particularly identified and described throughout this Complaint below) that leverage and infringe the inventions of the Asserted Patents in this State and this District and/or inducing others to commit acts of patent infringement in this State and District.

11.     On information and belief, Defendant has purposefully and voluntarily placed, and is continuing to place, one or more Accused Products into the stream of commerce through established distribution channels (including the Internet) with the knowledge and intent that the Accused Products are and/or will be used, sold to and purchased by consumers in the United States, this State, and this District; and with the knowledge and expectation that the Accused Products

(whether in standalone form or as integrated in downstream products) will be imported into the United States, this State, and this District

12.     Defendant maintains a "regular and established" place of business in this District. For example, Defendant maintains a corporate office in this District, located at 11001 Lakeline Boulevard, Building 2, Suite 100, Austin, Texas 78717. Defendant's office in the District is a regular and established place of business at least because this location includes many members of Defendant's important teams, including engineering personnel and sales representatives. Defendant's employees in the District are highly specialized and are important to the operation of Defendant.

13.     In addition, on information and belief, Defendant has derived substantial revenues from its infringing acts occurring within this State and this District. It has substantial business in this State and this District, including: (i) at least part of its infringing activities alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported, and services provided to Texas residents, including through its nvidia.com websites. Defendant derives benefits from its presence in this District. For example, Defendant receives revenue from sales and distribution via electronic transactions conducted on and using at least the Accused Products, and its incorporated and/or related systems.

14.     In addition, Defendant has knowingly induced and continues to knowingly induce infringement within this District by advertising, marketing, offering for sale and/or selling products and services with infringing functionality within this District, to consumers, customers, manufacturers, distributors, resellers, partners, and/or end users, and providing instructions, user

manuals, advertising, and/or marketing materials which facilitate, direct or encourage the use of infringing functionality with knowledge thereof.

15. Personal jurisdiction also exists specifically over Defendant because it, directly or through affiliates, subsidiaries, agents, or intermediaries, transacts business in this State or purposefully directed at this State (including, without limitation, with large-scale clients including Dell[1]) by making, importing, offering to sell, selling, and/or having sold infringing products and services within this State and District or purposefully directed at this State or District.

16. Defendant has, thus, in the many ways described above, availed itself of the benefits and privileges of conducting business in this State and willingly subjected itself to the exercise of this Court's personal jurisdiction over it. Indeed, Defendant has sufficient minimum contacts with this forum through its transaction of substantial business in this State and this District and its commission of acts of patent infringement as alleged in this Complaint that are purposefully directed towards this State and District.

17. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b) because, among other things, (i) Defendant is subject to personal jurisdiction in this District; (ii) Defendant has committed acts of patent infringement in this District; and (iii) Defendant has regular and established places of business in this District. On information and belief, Defendant maintains "regular and established" places of business in this District, including a corporate office in this District, located at 11001 Lakeline Boulevard, Building 2, Suite 100, Austin, Texas 78717.

18. Moreover, on information and belief, Defendant has previously litigated patent infringement cases before this Court without contesting jurisdiction and venue.

---

[1] *See, e.g.*, https://www.linkedin.com/jobs/view/sales-lead-north-america-dell-technologies-at-nvidia-4301236704/.

## THE ASSERTED PATENTS

19.    Plaintiff is the sole and exclusive owner of all right, title, and interest in the Asserted Patents and holds the exclusive right to take all actions necessary to enforce its rights in, and to, the Asserted Patents, including the filing of this patent infringement lawsuit. Plaintiff also has the right to recover all damages for past, present, and future infringements of the Asserted Patents and to seek injunctive relief as appropriate under the law.

20.    The '083 patent is entitled, "Method and apparatus for providing default media content to a calling party." The '083 patent lawfully issued on April 20, 2010, and stems from U.S. Patent Application No. 11/068,096 filed on February 28, 2005. A copy of the '083 patent is attached hereto as Ex. A.

21.    The '456 patent is entitled, "System and method for automatic language translation for applications." The '456 patent lawfully issued on October 14, 2014, and stems from U.S. Patent Application No. 13/428,135 filed on March 23, 2012. A copy of the '456 patent is attached hereto as Ex. B.

22.    The '694 patent is entitled, "Adjusting video layout." The '694 patent lawfully issued on July 21, 2015, and stems from U.S. Patent Application No. 14/045,616 filed on October 3, 2013. A copy of the '694 patent is attached hereto as Ex. C.

23.    The '201 patent is entitled, "Dynamic time-weighted systems and methods for management of acoustic exposure." The '201 patent lawfully issued on February 25, 2020, and stems from U.S. Patent Application No. 15/602,284 filed on May 23, 2017. A copy of the '201 patent is attached hereto as Ex. D.

24.     The '923 patent is entitled, "Embedding content of interest in video conferencing." The '923 patent lawfully issued on July 19, 2022, and stems from U.S. Patent Application No. 16/402,973 filed on May 3, 2019. A copy of the '923 patent is attached hereto as Ex. E.

25.     Plaintiff and its predecessors complied with the requirements of 35 U.S.C. § 287, to the extent necessary, such that Plaintiff may recover pre-suit damages for the Asserted Patents.

26.     The claims of the Asserted Patents are directed to patent eligible subject matter under 35 U.S.C. § 101. They are not directed to an abstract idea, and the technologies covered by the claims comprise systems and/or consist of ordered combinations of features and functions that, at the time of invention, were not, alone or in combination, well-understood, routine, or conventional.

27.     To the extent necessary, ATL has complied with the requirements of 35 U.S.C. § 287, such that ATL may recover pre-suit damages.

## DEFENDANT'S PRE-SUIT KNOWLEDGE OF ITS INFRINGEMENTS

28.     Prior to the filing of the Complaint, Plaintiff attempted to engage Defendant and/or its agents in good faith licensing discussions related to the Asserted Patents, including by sending them correspondence on October 10, 2025 notifying Defendant of the need to license the Asserted Patents. Defendant's past and continuing sales of its products and services (i) willfully infringe the Asserted Patents and (ii) impermissibly take the significant benefits of Plaintiff's patented technologies without fair compensation to Plaintiff.

29.     The Accused Products addressed in the Counts below include, but are not limited to, products and services identified in ATL's letter to Defendant. Defendant's past and continuing sales of the Accused Products (i) willfully infringe the Asserted Patents and (ii) impermissibly usurp the significant benefits of ATL's patented technologies without fair compensation.

## COUNT I

### (INFRINGEMENT OF U.S. PATENT NO. 7,702,083)

30.    Plaintiff incorporates the preceding paragraphs herein by reference.

31.    Plaintiff is the assignee of the '083 patent, with ownership of all substantial rights in the '083 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

32.    The '083 patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office in full compliance with Title 35 of the United States Code, after full and fair examination.

33.    Defendant has and continues to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '083 patent in this District and elsewhere in Texas and the United States.

34.    Defendant designs, develops, manufactures, and markets real-time AI visual effects for communications, such as NVIDIA Maxine ("the '083 Accused Products").

35.    Defendant directly infringes the '083 patent under 35 U.S.C. § 271(a) by using, making, offering for sale, selling, and/or importing the '083 Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '083 patent.

36.    For example, Defendant infringes claim 1 of the '083 patent via the '083 Accused Products. Defendant, via the '083 Accused Products, performs a method comprising "determining that a destination endpoint is not providing a media stream of a first media type to an originating endpoint." For example, the '083 Accused Products such as NVIDIA Maxine provide the option for a meeting participant to not use a video image of themselves in a meeting, but instead to utilize an AI avatar of themselves in a video format:

## NVIDIA Maxine

**NVIDIA Maxine™** is a collection of high-performance, easy-to-use, NVIDIA NIM™ microservices and SDKs for deploying AI features that enhance audio, video, and augmented reality (AR) effects for video conferencing and telepresence. With NVIDIA NIM, part of NVIDIA AI Enterprise, developers can access Maxine capabilities with easy-to-use microservices designed for secure, reliable, high-performance deployment across clouds, data centers, and workstations.

Maxine includes state-of-the-art models to create high-quality effects that can be achieved with standard microphones and webcams. Maxine improves telepresence through clear communication and innovative features like Background Noise Reduction, Studio Voice, Video Relighting, Maxine Audio2Face-2D, Eye Contact, Maxine 3D, and more.

*Figure 1.*[2]

## Video Conferencing

The NVIDIA Maxine AI developer platform brings advanced features that are accelerated and optimized for real-time inference on NVIDIA GPUs, integrating AI effects seamlessly into video conferencing applications. Maxine offers audio and video quality improvements as well as augmented reality effects. These features include background noise removal, virtual backgrounds, live avatars, and much more. Maxine was designed to improve the overall quality of video conferences while making them more immersive and interactive.

*Figure 2.*[3]

---

[2] https://developer.nvidia.com/maxine?sortBy=developer_learning_library%2Fsort%2Ftitle%3A
asc&hitsPerPage=6.
[3] https://developer.nvidia.com/maxine?sortBy=developer_learning_library%2Fsort%2Ftitle%3A
asc&hitsPerPage=6.

37.    For example, NVIDIA Maxine's Audio2Face feature operates in the GPU of the first user device, thus camera footage of the first user (i.e., a media stream of a first media type) is not sent to the second user device (i.e., an originating endpoint):

> **Maxine Audio2Face-2D**
> Creates lifelike facial animations from a single portrait photo, synchronized with audio input.

*Figure 3.*[4]



*Figure 4.*[5]

38.    Defendant, via the '083 Accused Products, performs "initiating transmission of default media of said first media type to said originating endpoint." For example, NVIDIA Maxine then initiates transmission of an avatar/digital human stream or placeholder video (i.e., default media of the same media type) to the second user device (i.e., originating endpoint):

---

[4] https://developer.nvidia.com/maxine?sortBy=developer_learning_library%2Fsort%2Ftitle%3A asc&hitsPerPage=6.
[5] https://developer.nvidia.com/maxine?sortBy=developer_learning_library%2Fsort%2Ftitle%3A asc&hitsPerPage=6.



*Figure 4.*[6]

39.     The technology discussion above and the exemplary '083 Accused Products provide context for Plaintiff's infringement allegations.

40.     At a minimum, Defendant has known of the '083 patent at least as early as the service of this complaint. Further, Defendant has known of the '083 patent at least as early as the filing date of the complaint. In addition, Defendant has known about the '083 patent since at least receiving correspondence from Plaintiff alerting Defendant to its infringement.

41.     On information and belief, since at least the above-mentioned dates when Defendant was on notice of its infringement, Defendant has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the '083 Accused Products that include or are made using all of the limitations of one or more claims of the '083 patent to directly infringe one or more claims of the '083 patent (e.g., claim 1, as discussed above) by using, offering for sale, selling, and/or importing the '083 Accused

---

[6] https://developer.nvidia.com/maxine?sortBy=developer_learning_library%2Fsort%2Ftitle%3A
asc&hitsPerPage=6.

Products. Since at least the notice provided on the above-mentioned dates, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '083 patent. Defendant intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the '083 Accused Products, creating and/or maintaining established distribution channels for the '083 Accused Products into and within the United States, manufacturing the '083 Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing real-time AI visual effects features in the '083 Accused Products, and/or providing technical support, updates, or services for these products to these purchasers in the United States. For example, Defendant configures the '083 Accused Products to contain specific instructions, in the form of executable code and configuration files, that cause such products to automatically implement and provide real-time AI visual effects functionality as discussed above (i.e., Defendant provides instructions that cause end users to use '083 Accused Products in an infringing manner). Moreover, in addition to the foregoing, Defendant encourages its customers and end users to use the '083 Accused Products in an infringing manner (e.g., through the implementation and use of real-time AI visual effects features as claimed by the '083 patent). *See, e.g.,* https://developer.nvidia.com/maxine?sortBy=developer_learning_library%2Fsort%2Ft itle%3Aasc&hitsPerPage=6 (marketing materials encouraging customers to use and/or purchase products and services included in the '083 Accused Products).

42.     In the alternative, on information and belief, since at least the above-mentioned dates when Defendant was on notice of its infringement, Defendant has contributorily infringed, under U.S.C. § 271(c), one or more claims of the '083 patent. For example, Defendant contributes

to the direct infringement of such claims by distributors, customers, subsidiaries, importers, and/or consumers that use, import, purchase, or sell the '083 Accused Products. To the extent that the '083 Accused Products do not directly infringe one or more claims of the '083 patent, such products contain instructions, such as source code, that are especially adapted to cause the '083 Accused Products to operate in an infringing manner. Such instructions are specifically designed to cause the '083 Accused Products to conduct the real-time AI visual effects in an infringing manner and are a material part of the invention of the '083 patent and are not a staple article of commerce suitable for substantial non-infringing use.

43.    On information and belief, despite having knowledge of the '083 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '083 patent, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '083 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

44.    Plaintiff has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II
### (INFRINGEMENT OF U.S. PATENT NO. 8,862,456)

45.    Plaintiff incorporates the preceding paragraphs herein by reference.

46.     Plaintiff is the assignee of the '456 patent, with ownership of all substantial rights in the '456 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

47.     The '456 patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office in full compliance with Title 35 of the United States Code, after full and fair examination.

48.     Defendant has and continues to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '456 patent in this District and elsewhere in Texas and the United States.

49.     Defendant designs, develops, manufactures, and markets real-time speech AI, such as NVIDIA Riva ("the '456 Accused Products").

50.     Defendant directly infringes the '456 patent under 35 U.S.C. § 271(a) by using, making, offering for sale, selling, and/or importing the '456 Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '456 patent.

51.     For example, Defendant infringes claim 1 of the '456 patent via the '456 Accused Products. Defendant, via the '456 Accused Products, performs a "method to translate displayed user-interface text of a computer application." For example, the '456 Accused Products such as NVIDIA Riva can translate a first language into displayed text of a second language:



*Figure 5.*[7]

52.     Defendant, via the '456 Accused Products, performs "intercepting, by a processor coupled to a memory and a screen, a command to display user-interface text on the screen in a first language, the command comprising the user-interface text to display in the first language." For example, NVIDIA via NVIDIA Riva intercepts, by a graphics processing unit (GPU) coupled to a memory and a screen of a device, a command to display user-interface text on the screen in a first language, the command comprising user-interface text to display in the first language:

---

[7] https://www.nvidia.com/en-us/ai-data-science/products/riva/?.

# What Is NVIDIA Riva?

NVIDIA® Riva is a collection of GPU-accelerated microservices for building real-time, customizable speech AI applications. Deliver world-class accuracy and lifelike voices with industry-leading ⬈ automatic speech recognition (ASR), text-to-speech (TTS), and neural machine translation (NMT)—customized for your brand and seamlessly integrated with large language models (LLMs) and retrieval-augmented generation (RAG). Deploy anywhere, from cloud to data center to edge.

*Figure 6.*[8]

## Translation Features #

Riva translation currently provides an API to translate to and from language pairs using models trained in NeMo Machine Translation. Support is limited exclusively to the **Megatron Multilingual** model architecture.

Riva translation enables you to `batch` multiple sentences together to provide a faster translation experience. Using the translation client, you can `batch` together up to 8 sentences to be translated in a single request. The `batch` size, which defaults to 8, can be adjusted using the `batch_size` parameter in the client.

## Multiple Deployed Models

The Riva server supports multiple models deployed simultaneously; up to the limit of your GPUs memory. As such, a single-server process can host models for a variety of language pairs as outlined above.

---

[8] https://www.nvidia.com/en-us/ai-data-science/products/riva/?.

*Figure 7.*[9]

53.     Defendant, via the '456 Accused Products, performs "extracting user-interface text to translate from the command" and "querying a translation mechanism by use of the extracted user-interface text." For example, NVIDIA, via NVIDIA Riva, extracts user-interface text to translate from the command and queries a translation mechanism by using the extracted user-interface text:



*Figure 8.*[10]

54.     Defendant, via the '456 Accused Products, performs "receiving translated user-interface text in a second language from the translation mechanism" and "displaying the translated

---

[9] https://docs.nvidia.com/deeplearning/riva/user-guide/docs/translation/translation-overview.html.

[10] https://docs.nvidia.com/deeplearning/riva/user-guide/docs/translation/translation-overview.html.

user-interface text in the second language." For example, NVIDIA, via NVIDIA Riva, receives translated user-interface text in a second language from the translation mechanism and displays the translated user-interface text in the second language:



*Figure 9.*[11]

55.    The technology discussion above and the exemplary '456 Accused Products provide context for Plaintiff's infringement allegations.

56.    At a minimum, Defendant has known of the '456 patent at least as early as the service of this complaint. Further, Defendant has known of the '456 patent at least as early as the filing date of the complaint. In addition, Defendant has known about the '456 patent since at least receiving correspondence from Plaintiff alerting Defendant to its infringement.

57.    On information and belief, since at least the above-mentioned dates when Defendant was on notice of its infringement, Defendant has actively induced, under U.S.C. §

---

[11] https://build.nvidia.com/nvidia/riva-translate-1_6b.

271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the '456 Accused Products that include or are made using all of the limitations of one or more claims of the '456 patent to directly infringe one or more claims of the '456 patent (e.g., claim 1, as discussed above) by using, offering for sale, selling, and/or importing the '456 Accused Products. Since at least the notice provided on the above-mentioned dates, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '456 patent. Defendant intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the '456 Accused Products, creating and/or maintaining established distribution channels for the '456 Accused Products into and within the United States, manufacturing the '456 Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing real-time speech AI features in the '456 Accused Products, and/or providing technical support, updates, or services for these products to these purchasers in the United States. For example, Defendant configures the '456 Accused Products to contain specific instructions, in the form of executable code and configuration files, that cause such products to automatically implement and provide real-time speech AI functionality as discussed above (i.e., Defendant provides instructions that cause end users to use '456 Accused Products in an infringing manner). Moreover, in addition to the foregoing, Defendant encourages its customers and end users to use the '456 Accused Products in an infringing manner (e.g., through the implementation and use of real-time speech AI features as claimed by the '456 patent). *See, e.g.,* https://www.nvidia.com/en-us/ai-data-science/products/riva/? (marketing materials

encouraging customers to use and/or purchase products and services included in the '456 Accused Products).

58.    In the alternative, on information and belief, since at least the above-mentioned dates when Defendant was on notice of its infringement, Defendant has contributorily infringed, under U.S.C. § 271(c), one or more claims of the '456 patent. For example, Defendant contributes to the direct infringement of such claims by distributors, customers, subsidiaries, importers, and/or consumers that use, import, purchase, or sell the '456 Accused Products. To the extent that the '456 Accused Products do not directly infringe one or more claims of the '456 patent, such products contain instructions, such as source code, that are especially adapted to cause the '456 Accused Products to operate in an infringing manner. Such instructions are specifically designed to cause the '456 Accused Products to conduct the real-time speech AI in an infringing manner and are a material part of the invention of the '456 patent and are not a staple article of commerce suitable for substantial non-infringing use.

59.    On information and belief, despite having knowledge of the '456 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '456 patent, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '456 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

60.    Plaintiff has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Plaintiff in an amount that adequately compensates

Plaintiff for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT III**

(INFRINGEMENT OF U.S. PATENT NO. 9,088,694)

61.    Plaintiff incorporates the preceding paragraphs herein by reference.

62.    Plaintiff is the assignee of the '694 patent, with ownership of all substantial rights in the '694 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

63.    The '694 patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office in full compliance with Title 35 of the United States Code, after full and fair examination.

64.    Defendant has and continues to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '694 patent in this District and elsewhere in Texas and the United States.

65.    Defendant designs, develops, manufactures, and markets video conferencing software, such as NVIDIA Broadcast App ("the '694 Accused Products").

66.    Defendant directly infringes the '694 patent under 35 U.S.C. § 271(a) by using, making, offering for sale, selling, and/or importing the '694 Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '694 patent.

67.    For example, Defendant infringes claim 1 of the '694 patent via the '694 Accused Products. Defendant, via the '694 Accused Products, performs a "method of providing a video layout for a video-conference, said video conference comprising a plurality of participants." For

example, the '694 Accused Products such as NVIDIA Broadcast App provide a video layout for a video-conference which comprises multiple participants:



*Figure 10.*[12]

68.    Defendant, via the '694 Accused Products, performs "detecting a region of interest of one or more video feeds." For example, NVIDIA, via NVIDIA Broadcast App, detects a region containing a participant (i.e., region of interest) in a video feed in order to auto frame:



*Figure 11.*[13]

---

[12] https://www.nvidia.com/en-us/geforce/broadcasting/broadcast-app/.
[13] https://www.nvidia.com/en-us/geforce/broadcasting/broadcast-app/.



*Figure 12.*[14]

69.     Defendant, via the '694 Accused Products, performs "determining a ratio between each region of interest and a full image area in each video feed." For example, NVIDIA, via NVIDIA Broadcast app, determines a ratio between regions containing the user and a full image area in each video feed to crop and zoom:

---

[14] https://www.nvidia.com/en-us/geforce/guides/broadcast-app-setupguide/.



*Figure 13.*[15]



*Figure 14.*[16]

70.     Defendant, via the '694 Accused Products, performs "determining a relative size of each participant's face for a layout" and "centering a resulting image so that the region of interest is centered." For example, NVIDIA, via NVIDIA Broadcast app, determines a relative size of each participant's face for a layout to apply the appropriate zoom and centers the user in a cropped and

---

[15] https://www.nvidia.com/en-us/geforce/broadcasting/broadcast-app/.
[16] https://www.youtube.com/watch?v=X0J-nO74ELA.

zoomed in image (i.e., resulting image) so that region containing the conference participant is centered:



*Figure 15.*[17]

71.    The technology discussion above and the exemplary '694 Accused Products provide context for Plaintiff's infringement allegations.

72.    At a minimum, Defendant has known of the '694 patent at least as early as the service of this complaint. Further, Defendant has known of the '694 patent at least as early as the filing date of the complaint. In addition, Defendant has known about the '694 patent since at least receiving correspondence from Plaintiff alerting Defendant to its infringement.

73.    On information and belief, since at least the above-mentioned dates when Defendant was on notice of its infringement, Defendant has actively induced, under U.S.C. §

---

[17] https://www.nvidia.com/en-us/geforce/broadcasting/broadcast-app/.

271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the '694 Accused Products that include or are made using all of the limitations of one or more claims of the '694 patent to directly infringe one or more claims of the '694 patent (e.g., claim 1, as discussed above) by using, offering for sale, selling, and/or importing the '694 Accused Products. Since at least the notice provided on the above-mentioned dates, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '694 patent. Defendant intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the '694 Accused Products, creating and/or maintaining established distribution channels for the '694 Accused Products into and within the United States, manufacturing the '694 Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing video conferencing features in the '694 Accused Products, and/or providing technical support, updates, or services for these products to these purchasers in the United States. For example, Defendant configures the '694 Accused Products to contain specific instructions, in the form of executable code and configuration files, that cause such products to automatically implement and provide video conferencing functionality as discussed above (i.e., Defendant provides instructions that cause end users to use '694 Accused Products in an infringing manner). Moreover, in addition to the foregoing, Defendant encourages its customers and end users to use the '694 Accused Products in an infringing manner (e.g., through the implementation and use of video conferencing features as claimed by the '694 patent). *See, e.g.,* https://www.nvidia.com/en-us/geforce/broadcasting/broadcast-app/ (marketing materials

encouraging customers to use and/or purchase products and services included in the '694 Accused Products).

74.     In the alternative, on information and belief, since at least the above-mentioned dates when Defendant was on notice of its infringement, Defendant has contributorily infringed, under U.S.C. § 271(c), one or more claims of the '694 patent. For example, Defendant contributes to the direct infringement of such claims by distributors, customers, subsidiaries, importers, and/or consumers that use, import, purchase, or sell the '694 Accused Products. To the extent that the '694 Accused Products do not directly infringe one or more claims of the '694 patent, such products contain instructions, such as source code, that are especially adapted to cause the '694 Accused Products to operate in an infringing manner. Such instructions are specifically designed to cause the '694 Accused Products to conduct the video conferencing in an infringing manner and are a material part of the invention of the '694 patent and are not a staple article of commerce suitable for substantial non-infringing use.

75.     On information and belief, despite having knowledge of the '694 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '694 patent, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '694 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

76.     Plaintiff has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Plaintiff in an amount that adequately compensates

Plaintiff for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT IV**

(INFRINGEMENT OF U.S. PATENT NO. 10,574,201)

77.     Plaintiff incorporates the preceding paragraphs herein by reference.

78.     Plaintiff is the assignee of the '201 patent, with ownership of all substantial rights in the '201 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

79.     The '201 patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office in full compliance with Title 35 of the United States Code, after full and fair examination.

80.     Defendant has and continues to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '201 patent in this District and elsewhere in Texas and the United States.

81.     Defendant designs, develops, manufactures, and markets real-time audio effects software, such as NVIDIA Maxine's Audio Effects SDK ("the '201 Accused Products").

82.     Defendant directly infringes the '201 patent under 35 U.S.C. § 271(a) by using, making, offering for sale, selling, and/or importing the '201 Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '201 patent.

83.     For example, Defendant infringes claim 16 of the '201 patent via the '201 Accused Products. Defendant, via the '201 Accused Products, performs a method comprising "receiving, at a processor configured to input, process, and output electrical signals, a first audio level data observed as sound energy produced by a first audio output." For example, the '201 Accused

Products such as NVIDIA Maxine's Audio Effects SDK process live audio frames for noise removal, voice activity detection, and speaker separation (i.e., a first audio output), and these audio frames can be measured for energy/volume:

## 1. Introduction to the NVIDIA Audio Effects SDK

The NVIDIA® Audio Effects SDK provides the following audio effects for broadcast use cases with real-time audio processing:

- **Noise Removal/Denoising**: Recordings of speech made outside of a recording studio can contain a lot of background noise, which causes the speech to be garbled and difficult to understand. The audio denoising effect removes this background noise from audio.
- **Room Echo Removal/Dereverb/Room Echo Cancellation**: Recordings of speech might contain reverberations from the recording environment, which can affect speech clarity. The dereverb effect helps remove or suppress these reverbs from audio.
- **Noise Removal and Room Echo Removal/Denoise Plus Dereverb**: The effect combines both the above effects to remove/suppress both noise and reverbs from audio. This offers much better performance than applying these effects separately.
- **Audio Super-Resolution**: This effect improves the sound quality by adding higher frequency content to the audio stream. For low-frequency audio, this feature predicts the higher frequency spectrum of input audio, which improves audio quality.
- **Acoustic Echo Cancellation (AEC)**: This effect removes acoustic echo and feedback from audio, which improves the bidirectional audio quality.

*Figure 16.*[18]

84.    Defendant, via the '201 Accused Products, performs "accessing, by the processor via a network interface, a threshold audio level data" and "determining, by the processor, whether the first audio level data is above the threshold audio level data." For example, NVIDIA accesses, by the processor, a Noise Suppression Effect (i.e., threshold audio level data) via the NVIDIA server (i.e., network interface):

## 1.1. About the Noise Removal/Background Noise Suppression Effect

Recordings of speech made outside a recording studio can contain a lot of background noise. The Audio Denoiser Effect removes a variety of background noises from audio recordings.

This effect retains emotive tones in speech, such as happy, sad, excited, and angry tones, which were removed as noise in previous releases of the SDK. Extreme emotive cases such as loud laughing, shrieking, screaming, and crying might not be retained.

---

[18] https://docs.nvidia.com/deeplearning/maxine/audio-effects-sdk/index.html.

*Figure 17*.[19]

This effect has the following characteristics:

- Supported input/output audio format is 32-bit float audio with a sampling rate of 16kHz/48kHz.
- In the Linux SDK, this effect has the following maximum throughput (# batches supported in real-time):

| Architecture | Maximum Throughput for the 16K Effect | Maximum Throughput for the 48K Effect |
|---|---|---|
| T4 | 2700 | 1280 |
| V100 | 5700 | 2700 |
| A100 | 11800 | 5300 |
| A10 | 6000 | 3072 |

*Figure 18*.[20]

85.     Defendant, via the '201 Accused Products, performs "upon determining that the first audio level data is above the threshold audio level data, executing, by the processor, an audio limiting action to cause a second audio output to operate at a reduced audio output level." For example, upon determining the background noise is above the Noise Suppression level, NVIDIA executes a background noise reduction (i.e., audio limiting action) to cause a second audio output to operate at a reduced audio output level (i.e., audio with only speech):

### 1.1. About the Noise Removal/Background Noise Suppression Effect

Recordings of speech made outside a recording studio can contain a lot of background noise. The Audio Denoiser Effect removes a variety of background noises from audio recordings.

This effect retains emotive tones in speech, such as happy, sad, excited, and angry tones, which were removed as noise in previous releases of the SDK. Extreme emotive cases such as loud laughing, shrieking, screaming, and crying might not be retained.

---

[19] https://docs.nvidia.com/deeplearning/maxine/audio-effects-sdk/index.html.
[20] https://docs.nvidia.com/deeplearning/maxine/audio-effects-sdk/index.html.

*Figure 19.*[21]



This effect has the following characteristics:

- Supported input/output audio format is 32-bit float audio with a sampling rate of 16kHz/48kHz.
- In the Linux SDK, this effect has the following maximum throughput (# batches supported in real-time):

| Architecture | Maximum Throughput for the 16K Effect | Maximum Throughput for the 48K Effect |
|---|---|---|
| T4 | 2700 | 1280 |
| V100 | 5700 | 2700 |
| A100 | 11800 | 5300 |
| A10 | 6000 | 3072 |

*Figure 20.*[22]

86.     Defendant, via the '201 Accused Products, performs "upon determining that the first audio level data is not above the threshold audio level data, executing, by the processor, the audio limiting action to cause the second audio output to operate at the reduced level audio output level to cause the second audio output to omit execution of the audio limiting action." For example, upon determining the background noise is not above the Noise Suppression level, NVIDIA omits the execution of a background noise reduction to cause the second audio output to operate at a reduced audio output level:



### 1.1. About the Noise Removal/Background Noise Suppression Effect

Recordings of speech made outside a recording studio can contain a lot of background noise. The Audio Denoiser Effect removes a variety of background noises from audio recordings.

This effect retains emotive tones in speech, such as happy, sad, excited, and angry tones, which were removed as noise in previous releases of the SDK. Extreme emotive cases such as loud laughing, shrieking, screaming, and crying might not be retained.

---

[21] https://docs.nvidia.com/deeplearning/maxine/audio-effects-sdk/index.html.
[22] https://docs.nvidia.com/deeplearning/maxine/audio-effects-sdk/index.html.

Figure 21.[23]



This effect has the following characteristics:

- Supported input/output audio format is 32-bit float audio with a sampling rate of 16kHz/48kHz.
- In the Linux SDK, this effect has the following maximum throughput (# batches supported in real-time):

| Architecture | Maximum Throughput for the 16K Effect | Maximum Throughput for the 48K Effect |
|---|---|---|
| T4 | 2700 | 1280 |
| V100 | 5700 | 2700 |
| A100 | 11800 | 5300 |
| A10 | 6000 | 3072 |

Figure 22.[24]

87.    The technology discussion above and the exemplary '201 Accused Products provide context for Plaintiff's infringement allegations.

88.    At a minimum, Defendant has known of the '201 patent at least as early as the service of this complaint. Further, Defendant has known of the '201 patent at least as early as the filing date of the complaint. In addition, Defendant has known about the '201 patent since at least receiving correspondence from Plaintiff alerting Defendant to its infringement.

89.    On information and belief, since at least the above-mentioned dates when Defendant was on notice of its infringement, Defendant has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the '201 Accused Products that include or are made using all of the limitations of one or more claims of the '201 patent to directly infringe one or more claims of the '201 patent (e.g., claim 16, as discussed above) by using, offering for sale, selling, and/or importing the '201

---

[23] https://docs.nvidia.com/deeplearning/maxine/audio-effects-sdk/index.html.
[24] https://docs.nvidia.com/deeplearning/maxine/audio-effects-sdk/index.html.

Accused Products. Since at least the notice provided on the above-mentioned dates, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '201 patent. Defendant intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the '201 Accused Products, creating and/or maintaining established distribution channels for the '201 Accused Products into and within the United States, manufacturing the '201 Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing real-time audio effects features in the '201 Accused Products, and/or providing technical support, updates, or services for these products to these purchasers in the United States. For example, Defendant configures the '201 Accused Products to contain specific instructions, in the form of executable code and configuration files, that cause such products to automatically implement and provide real-time audio effects functionality as discussed above (i.e., Defendant provides instructions that cause end users to use '201 Accused Products in an infringing manner). Moreover, in addition to the foregoing, Defendant encourages its customers and end users to use the '694 Accused Products in an infringing manner (e.g., through the implementation and use of real-time audio effects features as claimed by the '201 patent). *See, e.g.,* https://docs.nvidia.com/deeplearning/maxine/audio-effects-sdk/index.html (marketing materials encouraging customers to use and/or purchase products and services included in the '201 Accused Products).

90.    In the alternative, on information and belief, since at least the above-mentioned dates when Defendant was on notice of its infringement, Defendant has contributorily infringed, under U.S.C. § 271(c), one or more claims of the '201 patent. For example, Defendant contributes

to the direct infringement of such claims by distributors, customers, subsidiaries, importers, and/or consumers that use, import, purchase, or sell the '201 Accused Products. To the extent that the '694 Accused Products do not directly infringe one or more claims of the '201 patent, such products contain instructions, such as source code, that are especially adapted to cause the '201 Accused Products to operate in an infringing manner. Such instructions are specifically designed to cause the '201 Accused Products to conduct the real-time audio effects in an infringing manner and are a material part of the invention of the '201 patent and are not a staple article of commerce suitable for substantial non-infringing use.

91.     On information and belief, despite having knowledge of the '201 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '201 patent, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '201 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

92.     Plaintiff has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V
### (INFRINGEMENT OF U.S. PATENT NO. 11,394,923)

93.     Plaintiff incorporates the preceding paragraphs herein by reference.

94.    Plaintiff is the assignee of the '923 patent, with ownership of all substantial rights in the '923 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

95.    The '923 patent is valid, enforceable, and was duly and legally issued by the United States Patent and Trademark Office in full compliance with Title 35 of the United States Code, after full and fair examination.

96.    Defendant has and continues to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the '923 patent in this District and elsewhere in Texas and the United States.

97.    Defendant designs, develops, manufactures, and markets visual automation software, such as NVIDIA ACE ("the '923 Accused Products").

98.    Defendant directly infringes the '923 patent under 35 U.S.C. § 271(a) by using, making, offering for sale, selling, and/or importing the '923 Accused Products, their components and processes, and/or products containing the same that incorporate the fundamental technologies covered by the '923 patent.

99.    For example, Defendant infringes claim 1 of the '923 patent via the '923 Accused Products. Defendant, via the '923 Accused Products, performs a method comprising "acquiring, by a processor of a control unit, content during a communication session." For example, the '923 Accused Products such as NVIDIA ACE acquire, by a processor of a computer (i.e., control unit), a user's audio, voice, and video (i.e., content) during a communication session such as a video conference:

NVIDIA today unveiled major upgrades to the NVIDIA Avatar Cloud Engine (ACE) suite of technologies, bringing enhanced realism and accessibility to AI-powered avatars and digital humans. These latest animation and speech capabilities enable more natural conversations and emotional expressions.

Developers can now easily implement and scale intelligent avatars across applications using new cloud APIs for automatic speech recognition (ASR), text-to-speech (TTS), neural machine translation (NMT), and Audio2Face (A2F).

With these advanced features, available through the early access program, creators can leverage NVIDIA technologies to rapidly build next-generation avatar experiences. It is now easier than ever to build and deploy digital humans anywhere and at scale, using some of the most popular rendering tools such as Unreal Engine 5.

*Figure 23.*[25]

# AI-powered animations with emotion

Build more expressive digital humans with the latest ACE AI animation features and microservices, including newly added A2F emotional support. An Animation Graph microservice for body, head, and eye movements is also now available.

For developers handling rendering production through the cloud or looking to do real-time inference, there is now an easy-to-use microservice. And A2F quality improvements include lip sync, bringing even more realism to digital humans.



*Figure 1. NVIDIA ACE end-to-end development suite*

*Figure 24.*[26]

---

[25] https://developer.nvidia.com/blog/create-lifelike-avatars-with-ai-animation-and-speech-features-in-nvidia-ace/.

[26] https://developer.nvidia.com/blog/create-lifelike-avatars-with-ai-animation-and-speech-features-in-nvidia-ace/.

100.    Defendant, via the '923 Accused Products, performs "monitoring, by the processor, the content during the communication session." For example, Nvidia monitors, by the processor, the content (e.g., as a user's audio) during the communication session:



*Figure 25.*[27]



*Figure 26.*[28]

---

[27] https://developer.nvidia.com/blog/create-lifelike-avatars-with-ai-animation-and-speech-features-in-nvidia-ace/.
[28] https://build.nvidia.com/nvidia/audio2face-3d.



*Figure 27.*[29]

101.    Defendant, via the '923 Accused Products, performs "sensing, by the processor, a context within the content." For example, Nvidia senses, by the processor, context, such as a user's emotions in the audio (i.e., content.):



*Figure 28.*[30]

102.    Defendant, via the '923 Accused Products, performs "automatically performing, by the processor, an action in response to the context, wherein the action is performed at a time automatically determined by the processor, and wherein the time is based on the action and is

---

[29] https://build.nvidia.com/nvidia/audio2face-3d.
[30] https://build.nvidia.com/nvidia/audio2face-3d.

based on the context." For example, Nvidia automatically performs, by the processor, the output, such as the movement of the avatar (i.e., an action) in response to the emotion of the user (i.e., the context), wherein the movement of the avatar (i.e., the action) happens at a time automatically determined by the processor, where the time is based on the movement of the avatar (i.e., the action), and the emotion (i.e., the context):



*Figure 29.*[31]

103.    The technology discussion above and the exemplary '923 Accused Products provide context for Plaintiff's infringement allegations.

104.    At a minimum, Defendant has known of the '923 patent at least as early as the service of this complaint. Further, Defendant has known of the '923 patent at least as early as the filing date of the complaint. In addition, Defendant has known about the '923 patent since at least receiving correspondence from Plaintiff alerting Defendant to its infringement.

---

[31] https://build.nvidia.com/nvidia/audio2face-3d.

105.    On information and belief, since at least the above-mentioned dates when Defendant was on notice of its infringement, Defendant has actively induced, under U.S.C. § 271(b), its distributors, customers, subsidiaries, importers, and/or consumers that import, purchase, or sell the '923 Accused Products that include or are made using all of the limitations of one or more claims of the '923 patent to directly infringe one or more claims of the '923 patent (e.g., claim 1, as discussed above) by using, offering for sale, selling, and/or importing the '923 Accused Products. Since at least the notice provided on the above-mentioned dates, Defendant does so with knowledge, or with willful blindness of the fact, that the induced acts constitute infringement of the '923 patent. Defendant intends to cause, and has taken affirmative steps to induce infringement by its distributors, importers, customers, subsidiaries, and/or consumers by at least, inter alia, creating advertisements that promote the infringing use of the '923 Accused Products, creating and/or maintaining established distribution channels for the '923 Accused Products into and within the United States, manufacturing the '923 Accused Products in conformity with U.S. laws and regulations, distributing or making available instructions or manuals for these products to purchasers and prospective buyers, testing visual automation features in the '923 Accused Products, and/or providing technical support, updates, or services for these products to these purchasers in the United States. For example, Defendant configures the '923 Accused Products to contain specific instructions, in the form of executable code and configuration files, that cause such products to automatically implement and provide visual automation functionality as discussed above (i.e., Defendant provides instructions that cause end users to use '923 Accused Products in an infringing manner). Moreover, in addition to the foregoing, Defendant encourages its customers and end users to use the '923 Accused Products in an infringing manner (e.g., through the implementation and use of visual automation features as claimed by the '923 patent). *See, e.g.,*

https://docs.nvidia.com/deeplearning/maxine/audio-effects-sdk/index.html (marketing materials encouraging customers to use and/or purchase products and services included in the '923 Accused Products).

106.    In the alternative, on information and belief, since at least the above-mentioned dates when Defendant was on notice of its infringement, Defendant has contributorily infringed, under U.S.C. § 271(c), one or more claims of the '923 patent. For example, Defendant contributes to the direct infringement of such claims by distributors, customers, subsidiaries, importers, and/or consumers that use, import, purchase, or sell the '923 Accused Products. To the extent that the '694 Accused Products do not directly infringe one or more claims of the '923 patent, such products contain instructions, such as source code, that are especially adapted to cause the '923 Accused Products to operate in an infringing manner. Such instructions are specifically designed to cause the '923 Accused Products to conduct the visual automation in an infringing manner and are a material part of the invention of the '923 patent and are not a staple article of commerce suitable for substantial non-infringing use.

107.    On information and belief, despite having knowledge of the '923 patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '923 patent, Defendant has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant's infringing activities relative to the '923 patent have been, and continue to be, willful, wanton, malicious, in bad-faith, deliberate, consciously wrongful, flagrant, characteristic of a pirate, and an egregious case of misconduct beyond typical infringement such that Plaintiff is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the amount found or assessed.

108.    Plaintiff has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## CONCLUSION

109.    Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's wrongful acts, and willful infringement, in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

110.    Plaintiff has incurred and will incur attorneys' fees, costs, and expenses in the prosecution of this action. The circumstances of this dispute may give rise to an exceptional case within the meaning of 35 U.S.C. § 285, and Plaintiff is entitled to recover its reasonable and necessary attorneys' fees, costs, and expenses.

## JURY DEMAND

111.    Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

112.    Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

i.    A judgment that Defendant has infringed the Asserted Patents as alleged herein, directly and/or indirectly by way of inducing infringement of such patents;

ii.    A judgment for an accounting of all damages sustained by Plaintiff as a result of the acts of infringement by Defendant;

42

iii.   A judgment and order requiring Defendant to pay Plaintiff damages under 35 U.S.C. § 284, including up to treble damages as provided by 35 U.S.C. § 284, and any royalties determined to be appropriate;

iv.   A judgment and order requiring Defendant to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

 v.   A judgment and order finding this to be an exceptional case and requiring Defendant to pay the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285; and

vi.   Such other and further relief as the Court deems just and equitable.

Dated: October 22, 2025

Respectfully submitted,

/s/ *Patrick J. Conroy*
Patrick J. Conroy (Lead Counsel)
Texas Bar No. 24012448
Justin B. Kimble
Texas Bar No. 24036909
Jon Rastegar
Texas Bar No. 24064043
Nathan L. Levenson
Texas Bar No. 24097992
Brandon G. Moore
Texas Bar No. 24082372
**Nelson Bumgardner Conroy PC**
2727 N. Harwood St.
Suite 250
Dallas, TX 75201
Tel: (817) 377-9111
pat@nelbum.com
justin@nelbum.com
jon@nelbum.com
nathan@nelbum.com
brandon@nelbum.com

**Attorneys for Plaintiff**
**Arlington Technologies LLC**


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service on October 22, 2025.

/s/ *Patrick J. Conroy*